## A97A0593. AGONY v. THE STATE.
(486 SE2d 625)

BLACKBURN, Judge.

Jeffrey Agony a/k/a Jeffrey Briney appeals his convictions of theft by shoplifting and giving a false name. On appeal Agony asserts several enumerations of error.

1. In his first enumeration of error, Agony contends that the trial court erroneously denied his motion for severance of the offenses charged. An abuse of discretion standard applies when reviewing denial of a motion to sever the trial of separate offenses. See *Isbell v. State*, 179 Ga. App. 363, 366 (346 SE2d 857) (1986).

Agony argues that the separate crimes charged in the accusation did not arise out of the same conduct, did not involve the same victims or witnesses, and the evidence relating to one offense would not be admissible in the trial of the others.

"Offenses may be joined for trial when they are based (1) on the same conduct or (2) on a series of acts connected together or (3) on a series of acts constituting parts of a single scheme or plan. If offenses are joined for any of these three reasons, the defendant does not have an automatic right of severance; instead, the trial judge may grant severance if it is necessary to achieve a fair determination of the defendant's guilt or innocence of each offense." (Citations and punctuation omitted.) *Carter v. State*, 192 Ga. App. 726, 727 (4) (386 SE2d 389) (1989).

In *Carter*, we determined that the trial court did not err in denying the defendant's motion to sever the charge of giving a false name from the burglary charges, as the giving of a false name charge arose from the circumstances of his arrest for the burglaries. Id. at 727-728. In the present case, contrary to Agony's argument, the charge of giving a false name did arise from the circumstances of his arrest for theft by shoplifting. The trial court did not abuse its discretion in denying Agony's motion to sever.

2. In his second enumeration of error, Agony asserts that the evidence was insufficient to support his conviction of theft by shoplifting.

The standard of review of a claim of insufficiency of the evidence

to support a criminal conviction is whether any rational trier of fact could find defendant guilty beyond a reasonable doubt. This Court, in reviewing the case, views the evidence of record in the light most favorable to the finding of guilt to determine if such evidence is sufficient to establish every element of the crime chargeable to defendant. Where the evidence is circumstantial, in whole or in part, it must be sufficient to exclude every reasonable hypothesis save that of the guilt of the defendant. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990).

OCGA § 16-8-14 (a) (1) provides that "[a] person commits the offense of theft by shoplifting when he . . . , with the intent of appropriating merchandise to his own use without paying for the same or to deprive the owner of possession thereof or of the value thereof, . . . [c]onceals or takes possession of the goods or merchandise of any store or retail establishment."

Karen Carr, with Rich's Cumberland Mall Security, testified that she observed Agony enter the Rich's store through the mall doors on the second level. Agony got on the elevator, and Carr followed him on the escalator. Carr ran to the Dockers department, which is where the elevator opens, and could not locate Agony. After two minutes she saw Agony come from an employee-only area behind the elevators. He was walking briskly and carrying a white bag which was not a Rich's bag. Carr testified that she could see that the bag contained several pairs of pants. Agony was not carrying any bag when he walked into the store a few minutes earlier. As Carr followed Agony, he ran out of the store. After a few minutes of searching, Agony was found on the second floor of the parking deck lying down in the back seat of a red Cavalier. Upon recovery of the white bag, Carr discovered four pairs of Dockers pants with Rich's price tags and UPC, but no receipt. The pants were valued at $152.

Agony relies on our opinion in *Calhoun v. State*, 213 Ga. App. 375 (444 SE2d 405) (1994); however, the evidence in this case is distinguishable. In *Calhoun*, we reversed the defendant's shoplifting conviction based on insufficiency of the evidence. Therein, the State relied upon *hearsay* evidence which has no probative value to establish the shoplifting charge. Id. at 377. In the present case, although the evidence implicating Agony is circumstantial, it is *competent* evidence having probative value.

Additionally, an accused's flight, such as occurred in this case, is circumstantial evidence of consciousness of guilt; the fact that a suspect flees the crime scene points to the question of guilt in a circumstantial manner. *Campbell v. State*, 215 Ga. App. 14, 15 (1) (449 SE2d 366) (1994). "It was for the jury, weighing the evidence and determining witness credibility, to decide whether [Agony] was lawfully

arrested. . . . The jury was within its province to resolve [any] conflict of evidence against [Agony]." *Reddin v. State*, 223 Ga. App. 148, 150 (1) (476 SE2d 882) (1996).

Furthermore, unexplained recent possession of stolen goods supports an inference that the accused committed the theft. See *Quinn v. State*, 222 Ga. App. 423, 424 (1) (474 SE2d 297) (1996); *Bolar v. State*, 216 Ga. App. 195, 197 (4) (453 SE2d 790) (1995). Although Agony's trial counsel explained Agony's possession of the pants in her opening statement, opening statements are not evidence. Agony's counsel stated that Agony was at the mall with a friend. They separated to shop and met again at Rich's. The friend gave Agony a bag containing pants that the friend had purchased. The friend was going to the men's room, and Agony was supposed to meet him in the car. Agony's trial counsel further explained that the friend is in trouble with the police, and they were unable to locate him for trial. Opening statements are not evidence for the jury's consideration, and no evidence was, in fact, presented by the defendant explaining his possession of the pants. A review of the transcript reveals that the evidence is sufficient to meet the required standard. *Jackson v. Virginia*, supra.

3. Agony contends that the trial court erred in denying his motion for mistrial after the State introduced evidence of bad character when he did not first place his character into evidence. An abuse of discretion standard applies when reviewing a trial court's ruling on general evidentiary matters.

With respect to the first claim of error raised in this enumeration, Agony contends that a witness' reference to a revocation hearing improperly placed his character into evidence. However, the witness' answer was responsive to a question asked by Agony's counsel, and there can be no benefit to defendant from invited error. "Counsel cannot complain of a responsive answer to [her] question." *Brown v. State*, 180 Ga. App. 611, 612 (1) (349 SE2d 830) (1986).

Agony's remaining claims of error are limited to evidence which indicated that Agony had been previously incarcerated under another name. "[T]here are numerous instances where the [S]tate may properly offer evidence that the defendant has committed prior crimes for a purpose other than to show the defendant is a person of bad character. The fact that such evidence may reflect adversely on the defendant does not necessarily place his character in issue within the meaning of OCGA § 24-9-20 (b)." (Citations and punctuation omitted.) *Waugh v. State*, 218 Ga. App. 301, 304 (5) (460 SE2d 871) (1995). The evidence introduced concerning Agony's prior incarceration under another name was relevant to the present charge of giving a false name and was not objectionable based upon OCGA § 24-9-20 (b).

4. Agony contends that the State failed to prove that he gave a

false name to a law enforcement officer. We apply the same standard of review for this enumeration as was applied in Division 1 of this opinion.

OCGA § 16-10-25 provides that "[a] person who gives a false name, address, or date of birth to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to his identity or birthdate is guilty of a misdemeanor." There must be some evidence that the name given in the subject incident was false. Generally this is established by some proof of the defendant's real name. See *Jivens v. State*, 215 Ga. App. 306, 307 (5) (450 SE2d 328) (1994) (conviction upheld where defendant's counsel called defendant by a name different from that given to police combined with other evidence referring to defendant by same name that counsel used was sufficient to support conviction) and *Stanley v. State*, 213 Ga. App. 95, 97 (443 SE2d 633) (1994) (conviction upheld where defendant's identification did not match name given to police).

In the present case, even assuming all the evidence presented was properly admitted and viewing the evidence in the light most favorable to support the verdict, the evidence does not establish the name given in this incident was false as opposed to the names in the prior incidents being false. With regard to the present shoplifting charge, the defendant told the arresting officer that his name was Jeffrey Agony. The evidence showed that in 1991, the defendant was booked, photographed, and fingerprinted under the name Jeffrey Johnston. Hearsay evidence was allowed that showed that the Federal Bureau of Investigation telephonically reported that the defendant's fingerprints matched a file they had set up for one Jeffrey Briney. Additionally, when presented with a warrant for giving false statements pursuant to OCGA § 16-10-20, the defendant responded, "Good job. You got me." However, Agony's statement falls short of an admission of guilt of a violation of OCGA § 16-10-25.

This evidence simply establishes that on three different occasions the defendant has given different names to a law enforcement officer. It does not support even an inference that the defendant gave a false name to a law enforcement officer on this occasion rather than on prior occasions.

On cross-examination, the State's crime scene technician, James Turner, testified concerning the information from the FBI relative to the defendant's identification as follows: "Q. Isn't it true that even if indeed [the FBI] did it accurately that it would simply be a name given to the FBI, not necessarily his real name; correct? A. Correct. Q. And that Jeffrey Agony could be his real name? Correct? A. That's correct."

Under the present facts, it is just as likely that the defendant's name is Jeffrey Agony as it is that his name is Jeffrey Johnston. The

State made no attempt to introduce the FBI report it had into evidence. No other evidence of identification, such as a driver's license, was presented. See *Stanley*, supra. Furthermore, no testimony of anyone familiar with the defendant's name was presented. As the State failed to present sufficient evidence to allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt of giving the false name of Jeffrey Agony, the defendant's conviction for giving a false name must be reversed. See *Jackson v. Virginia*, supra.

5. Agony contends the trial court erred in allowing the introduction of hearsay testimony regarding the FBI's match of his fingerprints to the name Jeffrey Briney. The trial court allowed Officer Turner and Deputy Harton to testify that someone from the FBI called and reported that the fingerprints received matched those on file under the name Jeffrey Briney. This evidence is clearly hearsay. See OCGA § 24-3-1 (a). Furthermore, the State failed to show that the hearsay testimony was "necessary" within the meaning of OCGA § 24-3-1 (b). Its admission was harmful with respect to the false name conviction which we have reversed in Division 4.

6. Agony's remaining enumerations deal with assertions of discovery abuses relating to the giving of a false name charge which we have reversed and which are therefore moot.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Johnson, J., concur.*

DECIDED MAY 1, 1997.

Before Judge Flournoy.

*Perrotta & Associates, Gerard P. Verzaal, Brian R. Cahn*, for appellant.

*Thomas J. Charron, District Attorney, Nancy I. Jordan, Debra H. Bernes, Assistant District Attorneys*, for appellee.